UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA G. ERLANGER,

    Plaintiff,

v.                                      Case No. 1:12-cv-23
                                          Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

        Plaintiff was born on April 12, 1966 (AR 153).[1] She alleged a disability onset date of November 1, 2007 (AR 153). Plaintiff completed the 12th grade (AR 162). She had previous employment as a home health aid and day care provider (AR 159). Plaintiff identified her disabling conditions as chronic obstructive pulmonary disease (COPD) and a blood disorder (AR 158). Plaintiff stated that these conditions limit her ability to work because she cannot hold things for a long period of time, she is always tired and she has pain in her lower arms (AR 158). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 29, 2010 (AR 14-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step

2

analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and*

3

*Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 1, 2007 and that she met the insured status requirements under the Act through June 30, 2011 (AR 16). Second, the ALJ found that plaintiff had severe impairments of: bilateral degenerative arthritis in the ankles; flat feet; chronic bronchitis; obesity; and, a mood disorder (AR 16). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 12). The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant cannot lift/ carry/ push/ pull more than 10 pounds maximum and lesser weights more frequently; cannot stand and/or walk for more than 2 hours total in an 8-hour workday; can sit at least 6 hours in an 8-hour workday; cannot perform more than occasional postural movements. She should not be exposed to environments with concentrated levels of pulmonary irritants or hazards (i.e., unprotected heights or dangerous moving machinery). Mentally, she cannot understand, remember and execute more than simple job instructions; and cannot interact more than occasionally with coworkers, supervisors and the general public.

(AR 20). The ALJ also found that plaintiff could not perform any of her past relevant work (AR 19).

At the fifth step, the ALJ determined that plaintiff could perform a range of unskilled sedentary work in the regional economy (defined as the State of Michigan), which included approximately 2,000 benchwork type jobs (assemblers, testers, inspectors and packagers) which do not require more than occasional interaction with others and no collaborative work (AR 22). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from November 1, 2007 (the alleged onset date) through July 29, 2010 (the date of the

decision) (AR 22-23).

### III. ANALYSIS

Plaintiff has raised three issues on appeal.

**A.   The ALJ improperly relied upon the opinions of a medical expert who had not reviewed all the evidence available at the time of the hearing and who reviewed none of the post-hearing evidence.**

Plaintiff contends that the ALJ should not have relied on the opinions of the medical expert (ME), Charles Metcalf, M.D., at the administrative hearing, because the ME did not review all of the available evidence at the hearing and also failed to view the evidence submitted after the hearing.

**1.   ME's testimony at the hearing**

Plaintiff contends that Dr. Metcalf did not have access to all of her medical records, specifically Exhibits 14F, 15F and 16F (AR 290-349).  Plaintiff's Brief at p. 10.  Plaintiff also states that because Dr. Metcalf appeared via video hookup, the doctor could not review the ALJ's files.  *Id.* In response to plaintiff's claim, defendant states in conclusory fashion that the additional records (Exhibits 14F, 15F and 16F) were consistent with Dr. Metcalf's opinion that plaintiff could perform light, unskilled work.  Defendant's Brief at p. 15.

As an ME, Dr. Metcalf could assist the ALJ in determining the extent of plaintiff's impairments and whether any of those impairments met the requirements of a listed impairment.  *See* 20 C.F.R. §§ 404.1527(e)(2)(iii) and 416.927(e)(2)(iii) ("Administrative law judges may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart. When administrative law judges consider these opinions, they will evaluate them using the

5

rules in paragraphs (a) through (d) of this section."). At the hearing, when asked if plaintiff had any medically determinable impairments, Dr. Metcalf testified "I guess she does," adding that "[t]he problem is that most of the things that bother her, we don't have any records of or even the current treating physician's on" (AR 43). During the course of the hearing, it was established that Dr. Metcalf was missing three exhibits containing plaintiff's recent medical treatment: 14F (medical evidence from Arbor Circle, April 2008 through November 2008, AR 290-93); 15F (medical evidence from Cancer and Hematology Centers, July 2008 through November 2009, AR 294-302); and 16F (medical evidence from Wege Center, September 2008 through December 2009, AR 303-49) (AR 45). At the hearing, the ALJ noted that these recent exhibits were not part of the electronic record (the disc) sent to Dr. Metcalf (AR 45-47). The ALJ also noted that it was not counsel's fault that the records were not submitted to the doctor prior to the hearing (AR 45-47). In his brief, plaintiff observed that Dr. Metcalf appeared via video hookup and was not present in the hearing room to review the ALJ's file. Plaintiff's Brief at p. 10.

In his decision, the ALJ did not address the problem with the exhibits, summarizing Dr. Metcalf's opinions as follows:

> The medical expert, Dr. Metcalf testified that none of the claimant's impairments met or equaled any listing.
>
> \* \* \*
>
> As for the opinion evidence, there is no treating source opinion that the claimant is disabled due to her impairments. Great weight is given to the opinion of the medical expert, Dr. Metcalf, who has a great understanding of our disability programs and their evidentiary requirements.

(AR 19, 21).

The ALJ relied heavily upon Dr. Metcalf's opinion, giving it "[g]reat weight."

However, it does not appear to the court that Dr. Metcalf's opinion was supported by substantial evidence, because the doctor's opinion was based upon an incomplete medical record. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. 405(g) for a re-evaluation of plaintiff's impairments.

### 2. Post-hearing evidence

Plaintiff also contends that the ALJ could not rely on Dr. Metcalf's testimony because the doctor did not review the post-hearing evidence, which consisted of an attorney-referred psychological evaluation by Paul Delmar, Ph.D. (AR 350-66) and a consultative examination from an agency physician, R. Scott Lazzara, M.D. (Diplomate of the American Board of Internal Medicine) (AR 370-82). Plaintiff does not contend that Dr. Metcalf's failure to review the post-hearing evidence resulted in a due process violation. *See, e.g.*, *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996) ("[d]ue process requires that a social security hearing be 'full and fair'"). Rather, plaintiff contends that the doctor's testimony does not have a proper basis and cannot be regarded as competent, material and substantial evidence in support of the ALJ's decision. Plaintiff's Brief at pp. 10-12.

The ALJ summarized Dr. Delmar's post-hearing evaluation as follows:

> Post-hearing, the claimant underwent an attorney-referred psychological evaluation on March 22, 2010. She reported she resided with her 77 year old mother in her mother's home. Her 23-year old daughter also lived with them. She worried about her finances and her relationship with her daughter. She told the psychologist that she was frustrated over her daughter getting pregnant by an older man as well as her own multiple medical issues. Although she denied any further pain after her carpal tunnel surgeries; she said she had residual overall weakness in her hands with difficulty lifting objects. Based on his assessment, the consulting psychologist diagnosed the claimant with Major Depression Disorder, recurrent and severe; Generalized Anxiety Disorder; and Pain Disorder with both psychological features and a general medical condition. He rated her GAF at 47 and felt she had not been functioning at any higher level since her alleged onset date (17F).

(AR 18). The ALJ apparently rejected this evidence in favor of Dr. Metcalf's opinion given at the

hearing that plaintiff did not meet or equal a listed mental impairment (i.e., "[p]ost-hearing evidence submitted into the record does not provide any convincing evidence to alter that opinion").

The ALJ also summarized Dr. Lazzara's post-hearing evaluation:

> Post-hearing, the claimant also underwent a consultative internal medicine evaluation with Dr. Scott Lazzara. She gave a history of emphysema, blood disorder, problems with circulation, flat feet and rolling ankles. She complained of lower extremity edema and need to use 3-pillows and a fan to sleep at night. She still occasionally smoked. She was not on any inhaler therapy. The claimant had an AFO brace on her right foot and was getting fitted for one on her left foot. Physical exam noted flat feet and synovial thickening in both ankles. Lung exam noted moderate bronchial breath sounds and expiratory wheezing, but no accessory muscle use. Musculoskeletal exam noted no crepitance, effusion or joint laxity. Straight leg test was negative. There was no paravertebral muscle spasm. Grip strength remained intact and dexterity unimpaired. Finger joints had normal and full range of motion. She could pick up a coin, button clothing and open a door. She had full range of motion in all joints except reduced range of motion in the ankles with bilateral fallen arches. As a consequence of this the examiner noted she had difficulty with orthopedic maneuvers and compensated with a wide-based gait. She needed the use of an AFO device and a crutch for pain control. Motor strength and sensation were normal but there was areflexia in both knees and ankles. She could not toe/heel walk and had severe difficulty squatting. She estimated she could not sit for more than 15 minutes, stand for more than 20 minutes and lift more than 5 pounds. Mental status exam showed memory was intact. Judgment and insight were both appropriate. The consulting physician's diagnostic impression was degenerative arthritis of the ankles, bilaterally, and fallen arches. He observed she had findings of chronic bronchitis on clinical exam, but further noted she was not undergoing any active treatment. She was able to care for her personal hygiene and do shopping. The doctor determined she had intact manipulative movements and could sort, handle and use paper files, but limited her to less than sedentary work due to severe limitations on standing and walking (l9F).

(AR 18-19).

The ALJ also rejected Dr. Lazzara's opinion, in part, because it was inconsistent with the ME's opinion:

> Little weight is given to the opinion of Dr. Lazzara because there is no scientific evidence that the claimant is unable to be on her feet for 2 hours during an 8-hour workday. The opinion of Dr. Lazzara is over the top because the doctor finds no neurological abnormalities in his clinical examination, yet severely limits standing and

> walking. She has synovial thickening in her ankles. She also has flat feet. Dr. Metcalf testified that flat feet does not prevent an individual from standing and walking and does not require a foot brace. The residual functional capacity for sedentary work only requires the claimant to be on her feet a total of 2 hours in an 8-hour workday and the evidence does not support any further limitation on standing and walking. The claimant's obesity has been taking [sic] into consideration in the residual functional capacity determination.

(AR 21).

Given the record in this case, the court agrees that the ALJ's decision to discount the post-hearing evidence of Drs. Delmar and Lazzara was not supported by substantial evidence. The ALJ discounted this post-hearing evidence based upon Dr. Metcalf's opinion, which, as discussed previously, was based upon an incomplete medical record. Under these circumstances, where the ALJ consulted with an ME to identify plaintiff's impairments, plaintiff should have received the benefit of a complete review of her medical record by the ME. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. 405(g) for a re-evaluation of the opinions rendered by Drs. Delmar and Lazzara.

### B. The ALJ failed to consider the applicability of Listing 1.02 despite being specifically asked to do so and failed to address Listing 12.04 in light of the post-hearing evidence.

Plaintiff contends that the ALJ failed to consider either Listing 1.02 (major dysfunction of a joint(s) due to any cause)) or Listing 12.04 (affective disorders). Plaintiff points out that he requested the ALJ to consider Listing 1.02 in response to the ALJ's letter requesting comments on Dr. Lazzara's opinion (AR 200-04). Plaintiff also contends that Dr. Delmar's opinion could support a finding of disability under Listing 12.04.

9

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d) and 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d).

Here, the ALJ relied heavily upon Dr. Metcalf's opinion in determining that plaintiff did not meet any of the Listings:

> The medical expert, Dr. Metcalf testified that none of the claimant's impairments met or equaled any listing. Based on his review of the evidence at the time of the hearing, he opined she would be physically capable of at least sedentary exertion. With regard to any mental limitations, the doctor opined that under the "B criteria" the claimant has moderate limitations in social functioning and moderate deficiencies in concentration, persistence and pace. He found no limitations in daily living activities or evidence of episodes of decompensation.

> The undersigned finds the medical expert's opinion to be well supported by the medical evidence and adopts it in this decision. Post-hearing evidence submitted into the record does not provide any convincing evidence to alter that opinion. Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(AR 19).

The ALJ's determination with respect to the Listings is not supported by substantial evidence because he relied on Dr. Metcalf's opinion that plaintiff did not meet or equal any of the Listings. As previously discussed, the doctor's opinion was based upon an incomplete medical record. Under the circumstances of this case, a remand is appropriate to determine whether plaintiff met the requirements of Listings 1.02 and 12.04. The ALJ's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), for a re-evaluation of whether the plaintiff met the requirements of Listings 1.02 and 12.04.

### C. The ALJ erred in failing to find that plaintiff's bilateral carpal tunnel syndrome constituted a severe impairment.

The ALJ found that plaintiff suffered from severe impairments of bilateral degenerative arthritis in the ankles, flat feet, chronic bronchitis, obesity, and a mood disorder (AR 16). While the ALJ did not find that plaintiff suffered from a severe impairment with respect to the carpal tunnel syndrome, he noted that plaintiff had carpal tunnel release procedures in March and October 2009, that she had minimal discomfort by October 28, 2009 and that there was no evidence that her doctor continued to prescribe a pain killer (Vicodin) for her hand pain symptoms after that date (AR 17-18). A "severe impairment" is defined as an impairment or combination of impairments "which

11

significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* The record reflects that the ALJ found that plaintiff suffered from a number of severe impairments at step two of the sequential evaluation and that he completed the evaluation through step five. The record also reflects that the ALJ considered the effect of plaintiff's carpal tunnel syndrome. Under these circumstances, the ALJ did not commit error in failing to include plaintiff's carpal tunnel syndrome as a separate severe impairment.

### IV. CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. On remand, the Commissioner is directed to re-evaluate plaintiff's impairments in light of all of the exhibits submitted in this matter and to consider whether plaintiff met the requirements under Listings 1.02 and 12.04. A judgment consistent with this opinion will be issued forthwith.

Date: March 21, 2013        /s/ Hugh W. Brenneman, Jr.
                            Hugh W. Brenneman, Jr.
                            U.S. Magistrate Judge